

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-12-00297-CV

FRANCIS WILLIAMS MONTENEGRO, APPELLANT

V.

OCWEN LOAN SERVICING, LLC; AND
WELLS FARGO BANK, N.A., APPELLEES

On Appeal from the 353rd District Court
Travis County, Texas
Trial Court No. D-1-GN-07-003857, Honorable Scott Ozmun, Presiding

November 18, 2013

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Francis Williams Montenegro, appeals the trial court's entry of summary judgment in favor of appellees, Ocwen Loan Servicing, LLC, and Wells Fargo Bank, N.A. (collectively, "Ocwen"). We will affirm.

Background

On August 15, 2002, Vinh Nguyen ("Vinh") purchased the property at 911 Indian Run Drive, Pflugerville, Texas ("the subject property") with a Note and Deed of Trust which named Finance America, LLC, as the beneficiary. This Note and Deed of Trust was subsequently transferred to Wells Fargo Bank, N.A. The mortgage relating to this Note and Deed of Trust was serviced by Ocwen Loan Servicing, LLC.

On July 3, 2003, the subject property was purportedly purchased by Montenegro. As part of this transaction, Diem Thi Nguyen (Diem)[1] executed a Warranty Deed with Vendor's Lien that she signed "Vinh Nguyen, by his attorney-in-fact, Diem Thi Nguyen." Diem's claim to be Vinh's attorney-in-fact is supported by a durable power of attorney that was signed by Vinh on June 9, 2003. This power of attorney granted Diem authority to, *inter alia*, transfer Vinh's interest in real property. However, the power of attorney also expressly cited that it was executed according to the "Durable Power of Attorney Act, Chapter XII, Texas Probate Code." On July 8, 2003, Montenegro recorded the Warranty Deed with Vendor's Lien and a Deed of Trust with the Travis County Clerk's Office. The power of attorney was not recorded. From the time of his purported purchase of the subject property, Montenegro's mother, father, sister, and nephew have lived in the subject property.

According to Montenegro, he made monthly payments to Vinh from the time of his purchase of the subject property until April of 2006. On May 17, 2006, Montenegro sent a letter to Ocwen that notified Ocwen that Montenegro claimed ownership of the

_____

[1] The exact nature of the relationship between Vinh and Diem is unclear from the record.

subject property and sought authorization from Ocwen to make mortgage payments for the property directly to Ocwen. In this letter, Montenegro stated that,

> I was told by Pam that she could not speak with me regarding the matter until she received authorization from Vinh Nguyen. I explained that [] it was my belief he was incarcerated in Florida. She requested that I send my copy of the Deed and Promissory Note to discuss with superiors the authorization. I offered to pay the mortgage payment(s) in the interim, but she told me she could not receive them from me until such authorization was obtained.
>
> By this letter, I hereby request that such authorization be reviewed and permitted. I remain able and willing to pay the mortgage payment(s), and hope that this matter can [be] resolved in such a way as to remove Vinh Nguyen as the middle-man, as I am not certain about his availability in the future.

Montenegro attached copies of his Warranty Deed, Deed of Trust, and Promissory Note to this letter. While Ocwen never expressly authorized Montenegro to make direct payments, Montenegro made an $8,128.20 payment to Ocwen to cure Vinh's default. Thereafter, Montenegro made monthly payments on the subject property directly to Ocwen for approximately one year.

On August 17, 2007, Ocwen sent Vinh a Notice of Default and Intent to Accelerate. This notice was not sent to Montenegro. When the default was not cured, Ocwen sent a Notice of Acceleration and Posting to both Vinh and Montenegro on October 15, 2007. The subsequent foreclosure sale was scheduled for November 6, 2007. Montenegro filed his original petition in this case, and sought a temporary restraining order seeking to restrain the foreclosure sale. A temporary restraining order was issued on November 6, 2007. In spite of the issuance of the temporary restraining order, the foreclosure sale was held and Wells Fargo purchased the subject property.

3

After amending his petition, Montenegro asserted claims against Ocwen for wrongful foreclosure and to quiet title. In December of 2011, Ocwen filed a motion for traditional and no-evidence summary judgment seeking a take-nothing judgment as to all of Montenegro's claims. Montenegro filed his response and objections to Ocwen's summary judgment evidence. Ocwen filed its reply and objections to Montenegro's summary judgment evidence. On February 16, 2012, the trial court signed a take-nothing summary judgment. At the same time, the trial court entered orders denying Montenegro's objections to Ocwen's summary judgment evidence, and sustaining in part and denying in part Ocwen's objections to Montenegro's summary judgment evidence. Montenegro filed a motion for reconsideration, which was denied by the trial court. Montenegro timely filed notice of appeal.

Montenegro presents eight issues by his appeal. By his first two issues, Montenegro contends that he has standing to pursue his wrongful foreclosure and quiet title actions. By his third issue, Montenegro contends that the trial court erred in sustaining Ocwen's objection to the durable power of attorney of Diem. By his fourth and fifth issues, Montenegro contends that the trial court erred in granting no-evidence and traditional summary judgment on his wrongful foreclosure claims. By his sixth and seventh issues, Montenegro contends that the trial court erred in granting no-evidence and traditional summary judgment on his quiet title claims. Finally, by his eighth issue, Montenegro contends that he was not required to tender the amount due on Ocwen's note prior to filing suit.

Standard of Review

Because this is an appeal from the grant of a motion for summary judgment, Montenegro's issues challenge, directly or indirectly, the propriety of the trial court's summary judgment ruling. Ocwen's motion for summary judgment presented both no-evidence and traditional grounds for summary judgment. See Tex. R. Civ. P. 166a(c), (i).

Appellate courts review the granting of a motion for summary judgment *de novo*. See Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When a movant files a no-evidence motion in proper form under Rule of Civil Procedure 166a(i), the burden shifts to the nonmovant to defeat the motion by presenting evidence that raises an issue of material fact regarding the elements challenged by the motion. Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006). In other words, the nonmovant must respond to a no-evidence motion by presenting more than a scintilla of probative evidence on each challenged element. See King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); DR Partners v. Floyd, 228 S.W.3d 493, 497 (Tex. App.—Texarkana 2007, pet. denied). More than a scintilla of evidence exists when the evidence, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (quoting Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995)). The movant in a traditional motion for summary judgment, filed pursuant to Rule 166a(c), has the burden of showing that no genuine issue of material fact exists and that it is entitled to a summary judgment as a matter of law. See Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). The trial court must indulge every

reasonable inference in favor of the nonmovant and resolve all doubts in his favor. Id. When, as here, the trial court's order granting summary judgment does not specify the grounds relied upon, we must affirm summary judgment if any of the summary judgment grounds are meritorious. Progressive Cnty. Mut. Ins. Co. v. Kelley, 284 S.W.3d 805, 806 (Tex. 2009).

Standing

The first issue we must address is Montenegro's standing to challenge the foreclosure sale and to bring his suit to quiet title. A threshold question in any case is whether the court has subject matter jurisdiction over the pending controversy. See Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443-44 (Tex. 1993). Standing is a constitutional prerequisite to maintaining any suit, S. Tex. Water Auth. v. Lomas, 223 S.W.3d 304, 307 (Tex. 2007), and the lack of standing deprives a court of subject matter jurisdiction to hear a case. Austin Nursing Ctr., Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005) (citing Tex. Ass'n of Bus., 852 S.W.2d at 443). The general test for standing is whether a controversy exists between the parties that will be actually determined by the judicial declaration sought. Tex. Ass'n of Bus., 852 S.W.2d at 446.

Because subject matter jurisdiction is fundamental, it can be raised at any time. Tullos v. Eaton Corp., 695 S.W.2d 568, 568 (Tex. 1985). In fact, lack of subject matter jurisdiction may be raised by a court *sua sponte.* See Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). Whether a court has subject matter jurisdiction over

6

a case is a question of law that is reviewed *de novo*.  Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).

As a general rule, only the mortgagor or a party who is in privity with the mortgagor has standing to contest the validity of a foreclosure sale pursuant to the mortgagor's deed of trust.  Goswami v. Metro. Sav. & Loan Ass'n, 751 S.W.2d 487, 489 (Tex. 1988).  An exception to this general rule exists when a third party has a property interest, whether legal or equitable, that will be affected by the foreclosure sale.  Id.  In that instance, the third party has standing to challenge the sale to the extent that its rights will be affected by the sale.  Id. (citing Am. Sav. & Loan Ass'n v. Musick, 531 S.W.2d 581, 586 (Tex. 1976)).

In a suit to quiet title, the plaintiff must allege right, title, or ownership of the property with sufficient certainty to warrant judicial interference.  Ellison v. Butler, 443 S.W.2d 886, 888-89 (Tex. Civ. App.—Corpus Christi 1969, no writ).  A plaintiff has standing if he is "the holder of the feeblest equity" and may use a quiet title action to "remove from his way to legal title any unlawful hinderance having the appearance of better right."  Bell v. Ott, 606 S.W.2d 942, 952 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (quoting Thompson v. Locke, 1 S.W. 112, 115 (Tex. 1886)); see Henry v. Mr. M Convenience Stores Inc., 543 S.W.2d 393, 396 (Tex. Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.) (recognizing standing of third party holding equitable interest to sue to remove cloud on title).

Thus, because Montenegro is not the mortgagor under the deed of trust, he will have standing to bring these actions if he is in privity with Vinh, or has a legal or

7

equitable interest in the property that was affected by the foreclosure sale. Further, because our review is of the trial court's grant of summary judgment, the evidence must only raise a genuine issue of fact as to whether Montenegro possessed a legally cognizable interest in the property.

If we were to conclude that the unrecorded power of attorney was effective to authorize Diem to convey Vinh's ownership interest in the property to Montenegro, then Montenegro would be in privity of contract with Vinh, and would have standing to challenge the foreclosure sale and bring suit to quiet title. However, even though we will conclude below that the power of attorney was not effective to authorize Diem to convey Vinh's ownership interest in the property to Montenegro, the evidence showed that (1) Ocwen had constructive notice of Montenegro's claim of interest in the property due to the recordation of Montenegro's Warranty Deed and Deed of Trust; (2) Ocwen was directly notified of Montenegro's claim of ownership of the property by Montenegro's faxing of his Warranty Deed, Deed of Trust, and Promissory Note to Ocwen; (3) in his May 17, 2006 letter, Montenegro specifically notified Ocwen of his claim of ownership over the property, and sought authorization to make mortgage payments directly to Ocwen; (4) Ocwen accepted an $8,128.20 payment directly from Montenegro to cure Vinh's default and, thereafter, accepted monthly payments from Montenegro for approximately one year. We conclude that this is some evidence that Ocwen was on notice of Montenegro's claim of interest in the property that is sufficient to create a fact issue as to Montenegro's standing to bring the present actions. See Goswami, 751 S.W.2d at 489 (mortgagor's acceptance of mortgage payments from

8

third party who claims an ownership interest in the property establishes third party's equitable interest in the property).

Power of Attorney

By his third issue, Montenegro contends that the trial court erred in sustaining Ocwen's objection to the durable power of attorney that authorized Diem to convey Vinh's interests in real property. Ocwen responds contending that Montenegro waived his complaint regarding the exclusion of the power of attorney, and that the power of attorney was properly excluded as irrelevant.

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion. See TEX. R. APP. P. 33.1(a). A party whose summary judgment evidence was excluded may not argue any and every new issue he can think of on appeal. Cantu v. Horany, 195 S.W.3d 867, 871 (Tex. App.—Dallas 2006, no pet.) (citing Cruikshank v. Consumer Direct Mortg., Inc., 138 S.W.3d 497, 499 (Tex. App.—Houston [14th Dist.] 2004, pet. denied)); Rayl v. Borger Econ. Dev. Corp., 963 S.W.2d 109, 113 (Tex. App.—Amarillo 1998, no pet.). "When a party fails to object to the trial court's ruling that sustains an objection to his summary judgment evidence, he has not preserved the right to complain on appeal about the trial court's ruling." Cantu, 195 S.W.3d at 871; see Rayl, 963 S.W.2d at 113. Even if the objection appears meritorious on appeal, it is not preserved for appellate review if the record does not show that the complaint was made to the trial court. Cantu, 195 S.W.3d at 871 (citing Cruikshank, 138 S.W.3d at 500).

In the present case, Ocwen objected to consideration of the power of attorney on the basis that it was ineffective authorization to convey real property because it was not recorded, as required by statute. See TEX. PROB. CODE ANN. § 489 (West 2003). Montenegro did not file a response to Ocwen's objections to his summary judgment evidence. By order dated February 16, 2012, the trial court sustained Ocwen's objection to the power of attorney. Montenegro did not object to the trial court's sustaining Ocwen's objection to the power of attorney. Consequently, Montenegro has failed to preserve the right to complain about the trial court's sustaining of Ocwen's objection to the power of attorney. See Cantu, 195 S.W.3d at 871; Rayl, 963 S.W.2d at 113.

However, even if Montenegro had properly preserved his objection to the trial court's ruling, we could not conclude that the trial court abused its discretion in sustaining Ocwen's objection. A trial court's determination of an objection to summary judgment evidence is reviewed for abuse of discretion. Garner v. Fid. Bank, N.A., 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. Cire v. Cummings, 134 S.W.3d 835, 838-39 (Tex. 2004). To obtain reversal, an appellant must show error that probably caused the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1).

We are aware that much of Montenegro's case relies on the authority to convey the property at issue that the power of attorney purportedly granted to Diem. While the power of attorney authorizes Diem the power over "real property transactions," it does so under the authority of the "Durable Power of Attorney Act, Chapter XII, Texas Probate Code." Contained within this Act is section 489, which, in pertinent part,

10

provides: "A durable power of attorney for a real property transaction requiring the execution and delivery of an instrument that is to be recorded, including a . . . deed of trust, . . . shall be recorded in the office of the county clerk of the county in which the property is located." TEX. PROB. CODE ANN. § 489. The Warranty Deed that was recorded in Travis County is signed "Vinh Nguyen, by his attorney-in-fact, Diem Thi Nguyen." However, there is no evidence in the record to show that the durable power of attorney was recorded in Travis County. Consequently, the unrecorded power of attorney did not authorize Diem to convey the subject property to Montenegro. Because the power of attorney was rendered ineffective by statute, it was not relevant to any fact of consequence in this case, and was properly excluded by the trial court. See TEX. R. EVID. 401, 402.

Wrongful Foreclosure

By his fourth and fifth issues, Montenegro contends that the trial court erred in granting Ocwen's no-evidence and/or traditional summary judgment on his claims of wrongful foreclosure. Ocwen responds, *inter alia*, that Montenegro failed to identify a defect in the foreclosure sale proceedings because Montenegro was not entitled to notice of intent to accelerate and opportunity to cure. Because we conclude that there was no summary judgment evidence raising a genuine issue of material fact as to a defect in the foreclosure proceedings, we will limit our analysis to that element of Montenegro's wrongful foreclosure claim.

To prevail in a wrongful foreclosure suit, a party must establish (1) a defect in the foreclosure sale proceedings, (2) a grossly inadequate selling price, and (3) a causal

connection between the defect and the grossly inadequate selling price. Sauceda v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). Ocwen's summary judgment motion alleged that Montenegro could produce no evidence of any of these elements, and that evidence conclusively negates each of these elements.

Where the holder of a promissory note has the option to accelerate maturity of the note upon the maker's default, equity demands that notice be given of the intent to exercise the option. Ogden v. Gibraltar Sav. Ass'n, 640 S.W.2d 232, 233 (Tex. 1982). The holder of a mortgage secured by a deed of trust must notify the debtor of the intent to accelerate the note and clearly state that the failure to cure the default will result in acceleration of the note and foreclosure under the power of sale. Id. at 233, 234. To be effective, the notice of intent to accelerate must give the debtor an opportunity to cure the default before the holder of the mortgage may exercise the right to accelerate the note.[2] See Ogden, 640 S.W.2d at 233, 234.

Ocwen does not dispute that it did not provide Montenegro notice of intent to accelerate the note with an opportunity to cure the default before it accelerated the note and foreclosed on the property. Rather, Ocwen contends that it was not required, under the deed of trust or applicable law, to provide Montenegro notice of intent to accelerate and opportunity to cure.

_____

[2] Montenegro cites Allen Sales & Servicenter, Inc. v. Ryan, 525 S.W.2d 863, 865 (Tex. 1975), and the cases cited therein, as establishing that the debtor on a note is entitled to notice of intent to accelerate even when the note was not secured by the debtor's residence. However, each of these cases deal with the requirement that such notice be provided to the debtor on the note, rather than to a third-party with a claim of ownership.

The only defect in the foreclosure proceeding that Montenegro claimed in his live pleading was that Ocwen failed to give him notice of default and an opportunity to cure under Texas Property Code section 51.002(d). That provision provides,

> Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).

TEX. PROP. CODE ANN. § 51.002(d) (West Supp. 2013). The summary judgment evidence conclusively establishes that Montenegro did not use the subject property as his residence. Rather, the evidence established that Montenegro's mother, father, sister, and nephew lived in the subject property. As such, section 51.002(d) did not require Ocwen to give written notice of default and opportunity to cure to Montenegro. In fact, Montenegro admitted as much in his reply to Ocwen's response to Montenegro's motion for reconsideration.

Montenegro contends that he was entitled to notice of default and opportunity to cure under the Deed of Trust because he was identified as a debtor in Ocwen's records. However, even if Ocwen's records identified Montenegro as a debtor, Ocwen was not obligated to provide Montenegro notice of default and opportunity to cure. In Schlotte v. Option One Mortg. Corp., No. 09-11-00208-CV, 2012 Tex. App. LEXIS 4289, at *7-9 (Tex. App.—Beaumont May 31, 2012, pet. denied) (mem. op.), a third party to a deed of trust established that he had an equitable interest in the deed property. Id. at *7. Even though the mortgage servicer was aware of the third party's ownership interest in the property, the Schlotte court concluded that this knowledge did not, under the deed or

13

statute, require the mortgage servicer to give notice to persons that were not parties to the deed of trust. See id. at *9-14. Consequently, the Schlotte court affirmed the trial court's summary judgment denying the third party's wrongful foreclosure claims. See id. at *13-14.

Montenegro also claims that he assumed Vinh's obligations under the deed and was, therefore, a successor in interest as defined by the deed, which entitled him to notice of default and opportunity to cure.[3]  Montenegro cites a letter, dated May 17, 2006, that he sent to Ocwen notifying Ocwen that he had purchased the property from Vinh "approximately three years ago," and requesting "authorization" for Montenegro to pay the mortgage payments directly to Ocwen.  With this letter, Montenegro attached a copy of the Warranty Deed with Vendor's Lien, which was signed by Diem, rather than Vinh.  As such, Montenegro claimed an ownership interest in the property that was not supported by the documentation that he provided to Ocwen, and requested "authorization" only to pay the mortgage payments to Ocwen.  While the Deed of Trust provides that a successor in interest under the security agreement "shall obtain all of Borrower's rights and benefits under this Security Instrument," it conditions obtaining the status of successor in interest upon the written assumption of Borrower's obligations under the Deed of Trust, and approval of the assumption by the Lender.  However, the Deed of Trust also provides that, "[a]ny forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third-persons . . . shall not be a waiver of or preclude the exercise of any right or remedy."  Thus, the mere fact that Montenegro requested authorization to make mortgage

---

[3] The summary judgment evidence conclusively establishes that a successor in interest under the deed is entitled to notice of default and opportunity to cure.

14

payments directly to Ocwen did not make him a successor in interest under the deed and, therefore, did not establish that he was entitled to notice of default and opportunity to cure.

Montenegro contends that his letter notifying Ocwen of his claim of ownership of the property and request for authorization to make payments directly to Ocwen constituted a written assumption of Vinh's obligations under the deed of trust, and that Ocwen's acceptance of Montenegro's mortgage payments over the next twelve months constituted Ocwen's tacit approval of the assumption. Montenegro posits that, because Ocwen's representative said that she would need to obtain approval from her superiors before Ocwen could accept mortgage payments from Montenegro, Ocwen's subsequent acceptance of mortgage payments from Montenegro necessarily meant that his request to make mortgage payments directly had been approved. Indulging all reasonable inferences in favor of Montenegro, as we must, we agree that there is sufficient evidence to raise a fact issue as to whether Ocwen approved Montenegro to make mortgage payments directly to Ocwen. However, approval to make mortgage payments directly to Ocwen is not sufficient evidence to raise a fact issue as to whether Montenegro assumed Vinh's obligations under the deed. The plain language of the letter reflects that Montenegro sought nothing more than authorization to make mortgage payments directly to Ocwen. We are unable to read this request as a written assumption of Vinh's obligations under the deed. Without evidence that Montenegro assumed Vinh's obligations under the deed in writing and that this assumption was approved by Ocwen, as required by the deed of trust, Montenegro was not a successor

in interest under the deed and was not entitled to notice of default and opportunity to cure.

Montenegro also contends that Ocwen failed to give Vinh the notice of default and opportunity to cure required under the Deed of Trust. As discussed above, Montenegro has standing to challenge the foreclosure sale on the basis that a failure to properly serve the required notices on Vinh constitutes a defect in the foreclosure procedure. See Goswami, 751 S.W.2d at 489; Musick, 531 S.W.2d at 586. However, Montenegro did not raise a challenge regarding the notices provided to Vinh prior to entry of summary judgment. Therefore, he has waived this issue on appeal. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 677 (Tex. 1979) (grounds for summary judgment and issues in response must be in writing and before the trial court at the summary judgment hearing).

Finally, Montenegro contends that there was a defect in the foreclosure sale because it was held in violation of a temporary restraining order. As with Montenegro's challenge to Ocwen's notification of Vinh above, Montenegro failed to raise this issue prior to the trial court's entry of summary judgment. Consequently, the issue has been waived. See id. However, because the temporary restraining order that was issued did not require the posting of a bond, it was void. Ex parte Lesher, 651 S.W.2d 734, 736 (Tex. 1983) (citing TEX. R. CIV. P. 684).

Because there is either no evidence or the evidence conclusively negates one of the elements of Montenegro's wrongful foreclosure claim, we affirm the trial court's grant of summary judgment on this issue.

Quiet Title

By his sixth and seventh issues, Montenegro contends that the trial court erred in granting Ocwen's no-evidence and/or traditional summary judgment on his suit to quiet title. Ocwen responds contending that Montenegro waived his quiet title claims by not addressing them in his summary judgment response, has no ownership interest in the subject property, and failed to show the invalidity of the substitute trustee's deed.

The elements of a suit to quiet title are (1) plaintiff has an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the defendant's claim, though facially valid, is invalid or unenforceable. Vernon v. Perrien, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied).

Ocwen's summary judgment motion alleged that Montenegro could produce no evidence that Ocwen's claim is invalid or unenforceable, and that evidence conclusively establishes that Ocwen's claim is valid and enforceable. Notably, Montenegro's response to Ocwen's motion for summary judgment wholly fails to address this element of his claim. The only quiet title element addressed in Montenegro's response is his standing to pursue the claim. As such, Montenegro failed to raise a challenge regarding the invalidity or unenforceability of Ocwen's claim prior to entry of summary judgment. Therefore, he has waived this issue on appeal. See City of Houston, 589 S.W.2d at 677.

However, we briefly note that Montenegro failed to present evidence to raise a genuine issue of material fact on each element of his quiet title claim. A suit to quiet title is an equitable action used to establish that an adverse party's claim to property is

invalid, and to remove the cloud caused by the invalid claim from the owner's title.  See Vernon, 390 S.W.3d at 61.  Thus, to state a claim to quiet title, a plaintiff must establish that the challenged claim to the property is invalid or unenforceable.  See id. Montenegro's claim that the substitute trustee's deed is invalid is wholly based on the fact that he did not receive notice of default and opportunity to cure.  As we have determined above, Montenegro failed to raise a genuine issue of material fact that he was entitled to such notice under either the deed of trust or statute.  As such, Montenegro has failed to present any evidence that the substitute trustee's deed is invalid or unenforceable.

We affirm the trial court's grant of summary judgment on this issue.

Tender

By his eighth issue, Montenegro contends that he was not required to tender the amount due on the note as a precondition to bringing suit.  As we have determined above that the trial court's grant of summary judgment was supported by meritorious grounds, we need not address this issue.  See TEX. R. APP. P. 47.1.

Conclusion

Having determined that the trial court did not err in granting Ocwen's motion for summary judgment, we affirm the judgment of the trial court.

Mackey K. Hancock
Justice

18