

**FILED**
*August 11, 2015*
Third Court of Appeals
Jeffrey D. Kyle
Clerk

ACCEPTED
03-13-00123-cv
6244464
THIRD COURT OF APPEALS
AUSTIN, TEXAS
7/27/2015 9:32:05 PM
JEFFREY D. KYLE
CLERK

**No. 03 – 13 – 00123 - CV**

RECEIVED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
7/27/2015 9:32:05 PM
JEFFREY D. KYLE
Clerk

In The Court Of Appeals
For The Third Court Of Appeals District
Austin, Texas

FRANCIS WILLIAMS MONTENEGRO
And LYNDA WILLIAMS,
*Appellants*

v.

WELLS FARGO BANK, N.A.
*Appellee.*

On Appeal from County Court at Law No. 2
Travis County, Texas
Trial Court Cause No. C-1-CV-12-006182

**APPELLANT'S MOTION FOR REHEARING**

Francis Williams Montenegro
Counsel for Francis Williams Montenegro and Lynda Williams
Texas Bar No. 21533500
1503-A E. 13th St.
Austin, Texas 78702
Telephone: (512) 554-2812
email: montenegrolaw@gmail.com

**ORAL ARGUMENT REQUESTED**

Motion for Rehearing, p. 1 of 18

## Identity of Parties and Counsel

**Appellants:**
Francis Williams Montenegro
Lynda Williams
**Appellants' Counsel:**
Francis Williams Montenegro
State Bar No. 21533500
1503-A E. 13th Street
Austin, Texas 78702
Telephone:  (512) 554-2812
Email:        Montenegrolaw@gmail.com

**Appellee:**
Wells Fargo Bank, NA
**Appellee's Counsel:**
Kirk A. Schwartz
Blake Henshaw
H. Gray Burks, IV
SHAPIRO SCHWARTZ, LLP
State Bar No. 24004908
5450 Northwest Central, Suite 307
Houston, TX 77092
Telephone:  (713) 933-1541
                   (713) 933-1542
Facsimile:  (847) 879-4854
Email:        Kschwartz@logs.com
                   bhenshaw@logs.com
                   gburks@logs.com

CAUSE NO. 03-13-00123-CV

| | | |
|---|---|---|
| FRANCIS WILLIAMS MONTENEGRO § | IN THE COURT OF APPEALS | |
| and LYNDA WILLIAMS, | § | |
| Appellants | § | |
| | § | |
| vs. | § | THIRD APPEALS DISTRICT |
| | § | |
| WELLS FARGO BANK, N.A. | § | |
| Appellee | § | AUSTIN, TEXAS |

**APPELLANT'S MOTION FOR REHEARING**

TO THE HONORABLE THIRD COURT OF APPEALS:

Appellants Francis Williams Montenegro and Lynda Williams, by and through their undersigned attorney of record, move this court to reconsider its original opinion which affirmed the judgment of the trial court. The trial court had granted Appellees' Amended Motion for Summary Judgment in their action for forcible detainer.

INTRODUCTION: Questions Presented

1. The case presents two important questions. *One*, whether the trial court could determine which party had the superior right of possession without resolving the title dispute between the parties. If not, the trial court did not have subject matter jurisdiction, because the justice court, and hence the county court-at-law on appeal, do not have jurisdiction to resolve title

disputes, *Aguilar v.* Weber, 72 S.W.3d 729, 731 (Tex.App.--Waco 2002, no pet.). *Two*, whether a reasonable juror could have found that Wells Fargo failed to prove that it had the superior right to possession. If so, it was unlawful for the trial court to grant summary judgment, thereby denying the litigants the right to have a jury hear their case (Tex.R.Civ.Proc 744).

### "If the property is sold pursuant to this Section 22...."

2.      The court of appeals states that the trial court had jurisdiction, despite the title dispute in this case, "[b]ecause the deed of deed of trust permitted nonjudicial foreclosure and because the foreclosure under the deed of trust created a landlord and tenant-by-sufferance relationship between the parties." Yet the deed of trust permits nonjudicial foreclosure only if certain conditions, including one that the Lender must offer the Borrower the opportunity to cure, are first first met. The applicable provision, Section 22, provides:

> "Lender shall give notice to Borrower prior to acceleration following Borrower's breach … The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date … by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by the Security Instrument and the Sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration.... *If the default is not cured on or before the date specified in the notice, Lender … may … invoke the power of sale....*"

"*If the property is sold pursuant to this Section 22*, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such other person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding." (Emphasis added.) [C.R. 59]

The plain language of Section 22 is that the Lender shall give the borrower an opportunity to cure an alleged default prior to foreclosure. An ordinary person—a juror, or a party to the agreement—may reasonably interpret the clause, "If the property is sold pursuant to this Section 22...," to mean, "if the provisions of Section 22 regarding the sale are followed." A reasonable understanding of Section 22 is that if notices of alleged default are provided, and if opportunity to cure the default is made, but there still remains a default, then, and only then, the lender may foreclose upon the property.

3.    Courts have interpreted this clause however, to mean that even if the provisions of Section 22 are *not* followed, even an unlawful foreclosure could still be "pursuant to Section 22" for purposes of eviction, *see,* for example*, Bierwirth v. AH4R I TX, LLLC,* No. 01-13-00459-CV (Tex.App.--Houston [1st], October 30, 2014. And what's more, in granting summary judgment, the court has interpreted the clause as a *matter of law*,

without reference to what the parties may have meant. Courts in such cases in are effect saying, *there is no other reasonable way to interpret it.*

4. What borrower with the legal capacity to contract would agree to such an unconscionable provision? If before they signed, the lender spelled it out: "Now, Section 22 here says that we will give you notice before we foreclose, and that you'll have an opportunity to get caught up if you're behind in your payments. But after that, if we still have to foreclose, you're going to have to move out, and if you don't, you'll be what's called a 'tenant at sufferance,' and we can have you evicted. Now that's what it says. But, that's not really what it means. See, even if we don't have the legal *right* to foreclose, we have the *power* to. And if we exercise that power, no matter how unlawful we're being, it doesn't matter if we let you get caught up on your payments or not. We can kick you out if we don't tell you we think your behind in your payments or not. Please go ahead and sign here, and what you're saying we can evict you anyway. We might be wrong, but we're not going to have to prove it before we kick you out. We can get you and your family out of your home in three days." Where do I sign?

5. In what other areas of law are contract provisions interpreted by courts so contrary to their plain language, and so contrary to what a

reasonable person would agree to? Generally, what the parties understand a contractual provision to mean, as manifested by the language of the provision, determines its meaning; if the language is subject to more than one interpretation, determining the parties' intent is a question for the trier of fact, and summary judgment should not be granted, *Coker v. Coker*, 650 S.W.2d 391 (Tex. 1983); *Chapman v. Abbot*, 251 S.W.3d 612 (Tex.App.— Houston [1st Dist.] 2007).

6.      In the context of foreclosures, the Texas Supreme Court has written, "If the meaning of a term in an acceleration clause is open to reasonable doubt, it should be construed to avoid acceleration…" *Shumway v. Horizon Credit Corporation,* 801 S.W.2d 890, 893 (Tex. 1991). There is no reason to demand a far lesser standard when the acceleration clause is used for the purposes of eviction. In a concurring opinion in *Shumway,* Justice Mauzy, writing that "equity demands … a reasonable opportunity to cure any default" before a mortgage note is accelerated, wrote: "To hold otherwise places this court in the position of enforcing a contract that 'no man in his senses and not under delusion would make on the one hand, and [which] no honest and fair man would accept on the other,'" *Id. at* 896.

7.     The summary judgment process should not be used to deprive litigants of their right to a jury to resolve disputed questions of fact, *Cedyco Corp. v. Whitehead*, 253 S.W.3d 877, 879 (Tex.App.—Beaumont 2008). It should be noted that *Montenegro v. Ocwen,* 419 S.W.3d 561 (Tex.App—Amarillo 2014, pet. den'd), the title case parallel to the present one, did not hold that the foreclosure in the present case was lawful, because the court did not settle the issue as to whether Nguyen had been provided the foreclosure notices required by Section 22 or by the law. The court instead held that Montenegro had waived the issue on appeal, *Id.* at 571, 572. Appellant Williams was not a party to *Montenegro v. Ocwen.* The issue, then, has not been fully and fairly litigated.

8.     When a court grants summary judgment because of the very existence of such a clause in the deed of trust, without regard to how the parties understood the clause; when the court reads out essential parts of the clause and refuses to consider whether the foreclosure sale was even *legal—*as if someone would agree to be evicted based upon an illegal sale of their home!--courts have deprived litigants of their right to have a jury hear the facts of their cases. Without due process of law, they have allowed people to be dispossessed of their homes.

*Montenegro v. Ocwen Loan Servicing, LLC:* Montenegro's ownership interest derived from his payment relationship with Ocwen.

9.      In *Montenegro v. Ocwen Loan Servicing, LLC,* 419 S.W.3d 561 (Tex.App—Amarillo 2014, pet. den'd), the title case parallel to this one, the Seventh Court of Appeals did not hold that Appellant Montenegro had not shown an ownership interest in the property. Rather that court determined that his ownership interest derived directly from his payment relationship with Ocwen, the lender's agent, rather than as a successor in interest to Vinh Nguyen, *Id.* at 568.

10.      This is significant on the disputed issue in the present case as to whether or not Appellants were tenants at sufferance. The court in the present case found it "indisputable" that Appellants held possession of the property through Vinh Nguyen, and thus were tenants at sufferance per Section 22 of the deed of trust. However, the court in *Montenegro v. Ocwen* found that Montenegro's warranty deed merely purported to be a transfer from Nguyen; the court found that the power of attorney which purported to authorize Diem Thi Nguyen to execute the deed of trust for Nguyen was ineffective, *Id.* at 568. The court did find, however, that Montenegro provided sufficient evidence of ownership based upon his making payments

for the property directly to Ocwen, *Id*. A reasonable inference is that Appellant's did not hold possession from Vinh but from Ocwen.

11.     Movant/ Appellee itself raised this issue by a judicial admission —a "waiver of proof" --in its summary judgment pleadings. In its Amended Motion for Summary Judgment, Appellee alleged, "On July 3, 2003, some individual, not Vinh Nguyen, purported to convey the Property to Francis Williams Montenegro," C.R. 34. A judicial admission, even in the pleadings, is a "waiver of proof," *Galvan v. Public Utilities Bd*, 778 S.W.2d 580, 583 (Tex.App.--Corpus Christi 1989), and thus Appellants were relieved of any obligation to offer their own evidence on the issue, *Id.*

12.     As nonmovants for summary judgment, Appellants on this issue, and as nonmovants for summary judgment, they are to be given the benefit of the admission and of the inference, *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). A reasonable juror could find that Movant/Appellee did not prove that Appellants possessed the property through the Borrower rather than directly through Montenegro's relationship with Ocwen.

There is no evidence that Wells Fargo had obtained a security lien

13.     Movant/Appellees offered no evidence to show that Wells Fargo had the *power* to foreclose the security lien of the deed of trust, because there is no evidence that Wells Fargo obtained such a lien. The substitute trustee's deed, which purported to convey the property to Wells Fargo Bank, provides, "Whereas, it is provided *in the deed of trust* that failure to make any of the payments … shall, at the option of Wells Fargo Bank, N.A. …" (emphasis added). A reasonable juror after reading that provision may then look at the deed of trust, but would look in vain for any mention of Wells Fargo Bank. No matter how thoroughly the juror reviewed Appellee's/Movant's evidence, the juror would find no evidence in the record that Wells Fargo Bank acquired a security lien or any other interest in the property giving it the power to foreclose. A reasonable juror may that there is insufficient evidence to conclude that a foreclosure by Wells Fargo Bank was of a lien superior to Appellants' rights to possession.

<u>The trial court had no jurisdiction over Williams's adverse possession claim.</u>

14.     *Montenegro v. Ocwen, supra,* did not address Lynda Williams's adverse possession claim at all. The court in the present case skirts this title issue by stating that she failed to point to evidence which raised a fact issue

on the claim. That is not true. The summary judgment response dated December 17, 2012, filed with leave of the trial court, C.R. 225, points out:

> "Wells Fargo avers that the Property was *purportedly* [emphasis added] conveyed to Montenegro 'without receiving permission from Wells Fargo' (Plaintiffs Amended Motion for Summary Judgment, paragraph 2). Wells Fargo further argues that 'his' [Montenegro's] Warranty Deed from the borrower, Vinh Nguyen' is evidence that Montenegro and/or Williams occupied the Property'. (Id, paragraph 12).... Under Wells Fargo's analysis, a reasonable inference is that Montenegro and/or Williams occupied the Property since 2003 'without receiving permission from Wells Fargo.'"

15.     Moreover, by focusing on whether Appellants raised fact issues on the affirmative defense, the court of appeals is attempting to resolve the *merits* of the adverse possession claim, which it was without jurisdiction to do, *Bynum v. Lewis,* 393 S.W.3d 916 (Tex.App.--Tyler 2013).

<u>The resolution of title issues in the present case</u>

16.     Appellee Wells Fargo, in arguing that the trial court did not have jurisdiction of the case until February 16, 2012 (over a year after it filed the case), pointed out that the issues of title and possession were "intertwined" because Appellant Montenegro was "claiming title through a deed separate from the deed foreclosed by Plaintiff [Appellee Wells Fargo]", C.R. 127, *citing Dormady v. Dinero Land & Cattle Co., LC*, 61 S.W.3d 555, 557 (Tex.App.--San Antonio 2001, pet. dism'd w.o.j.). Indeed, there were no

disputed elements of material fact, the court of appeals was continually required to resolve title questions in Wells Fargo's favor. In determining whether Wells Fargo had presented sufficient evidence of ownership of the property, the court implicitly sanctions the validity of the contested Substitute Trustee's Deed. The court further determines that Wells Fargo's right to possession derived from a lien superior to Montenegro's warranty deed or Williams' possession of the property, resolving those title questions in Appellee's favor (even in the absence of evidence showing that Wells Fargo had ever obtained that lien).

<u>The court cannot determine if there was sufficient evidence of ownership without resolving the contested title issue in favor of Wells Fargo.</u>

17.    The court states that Wells Fargo did not have to prove its own deed was valid, merely that its deed provided evidence of an ownership interest. The basis of the title contest was whether the substitute trustee's deed was valid or whether it was not. It was not "partially" valid. The very question of whether a deed can be "partially" valid, or if an invalid deed can itself provide only a partial ownership interest, requires consideration of issues not within the jurisdiction of a forcible detainer case.

18.     Are the courts saying that in a forcible detainer case, any recorded deed, whether lawful or not, provides unassailable evidence of an ownership interest—evidence that cannot be challenged by the other party? If the recorded substitute trustee's deed is erroneous or simply fraudulent, are the homeowners defenseless in an eviction action?

19.     The better rule, if the trial court is to have jurisdiction at all, was stated in *Haith v. Drake*, 596 S.W.2d 194, 197 (Tex.App.--Houston [1st Dist] 1980): "It is ... well settled that the defendant, in an action of forcible detainer, may prove any facts not inconsistent with the title under which he went into possession of the premises which show that his right to occupancy existed when the suit was brought, although such facts may be connected to the title."

20.     Even if the substitute trustee's deed is *sufficient* evidence of ownership, it alone cannot prove of ownership *as a matter of law.* Summary judgment is inappropriate when there is evidence that the substitute trustee's deed title was invalid, either because the court is without jurisdiction or because the disputed fact matter should be given to the jury in a court with jurisdiction, such as a trespass to try title case.

21.     In determining that Wells Fargo's right to possession derived from a lien superior to Montenegro's warranty deed or Williams' possession of the property, the court implicitly determined that the original lien was valid; that Wells Fargo obtained its interest in that lien lawfully; and that Appellants respective claims to the property were inferior. To determine a rule for priority of interest, the court of appeals must reference a case, *Cervantes v. Bayview Loan Servicing, LLC*, No. 14-12-00157-CV, 2012 WL 6017712, at *2 (Tex.App.--Houston [14th Dist.] Dec. 4, 2012, no pet.), which involved only title, not right to possession. But *Cervantes* does not describe an immutable law to be rigidly applied in every case; there may not be distinctions among various cases. Even *Cervantes* acknowledges that the "first in time, first in sight" rule applies "ordinarily" (emphasis added), implying there may be exceptions. *Cervantes* itself is distinguishable from the present one because there is no evidence until after foreclosure that Appellee Wells Fargo had *any* lien on the property.

22.     The trial court in a forcible detainer action does not have jurisdiction to consider the exceptions and distinctions among title cases, Texas Rules of Civil Procedure 510.3(e) (former Rule 746); Texas Const. Art. V, Sec. 8; Tex. Gov't Code, Section 26.043. If a court cannot perform

its duty to consider how a rule of law applies to the *particular* facts of a case, it does not have jurisdiction of the issues; if the court *does* consider how the law applies to a case, it has *assumed* jurisdiction of the issues.

23. It's a one-two punch for homeowners in eviction cases after foreclosure: the court may not resolve a title dispute, but summary judgment is granted presuming as a matter of law the validity of the title and the superiority of the foreclosing lien to the residents' possession. When the superiority of the foreclosing lien can only be determined by implicitly deciding that the occupants' title claim is inferior, as in the present case, a trespass to try title action in the district court, rather than forcible detainer in the justice court, should be the appropriate action. At the very least, courts in forcible detainer actions should not decide as a matter of law that the language of the deed of trust makes the occupants tenants at sufferance as a matter of law, without reference to the plain language of the provision or to what the parties could reasonably have understood. That issue should go to the jury.

## PRAYER

Wherefore, premises considered, Appellant prays this honorable court to reconsider its original opinion in this case, and reverse the order of the

trial court granting Appellees' motions for no-evidence and traditional summary judgment, and to remand the cause to the trial court for new trial.

Respectfully submitted,


/s/  Francis Williams Montenegro
Francis Williams Montenegro
Counsel for Appellants
Texas Bar No. 21533500
1503-A E. 13th Street
Austin, TX 78702
(512) 554-2812
email: montenegrolaw@gmail.com

## CERTIFICATE OF COMPLIANCE

I, Francis Williams Montenegro, Appellant, hereby certify that the word count for this document, excluding the title page, identity of counsel page, and certificates, as counted by Microsoft Word, is 3101.

/s/  Francis Williams Montenegro
Francis Williams Montenegro

## CERTIFICATE OF SERVICE

I, Francis Williams Montenegro, Appellant, hereby certify that a true and correct copy of this Appellant's Motion for Rehearing was on this 27th day of July, 2015, delivered to counsel for Appellee, Shapiro Schwartz LLP, by electronic service through CaseFileExpress, and by email to bhenshaw@logs.com, Attn: Blake Henshaw.

/s/  Francis Williams Montenegro

Francis Williams Montenegro, *Pro Se*
Counsel for Appellants
Texas Bar No. 21533500
1503-A E. 13th Street
Austin, TX  78702
(512) 476-1212
Fax: (512) 476-3178
email: montenegrolaw@gmail.com