## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-20246

GUILHERME CASALICCHIO,

> Plaintiff - Appellant

v.

BOKF, N.A., doing business as Bank of Texas; FEDERAL HOME LOAN MORTGAGE CORPORATION, doing business as Freddie Mac,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**
March 6, 2020

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and STEWART, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Under Texas law, "the terms set out in a deed of trust must be strictly followed." *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982). In this case, we are asked to decide just *how* strictly. The appellant, Guilherme Casalicchio, requests that we set aside a foreclosure sale of his residence because his lender, BOKF, N.A. ("BOKF"), mailed him a pre-foreclosure notice with the wrong deadline for curing default. As Casalicchio points out, the letter contained a deadline thirty days from the day the notice was *printed*, even though the deed of trust called for a deadline thirty days from the day the letter was *mailed*.

No. 19-20246

Casalicchio all but concedes, however, that this mistake did not result in any harm or prejudice. We complete his thought process and conclude that there clearly was no harm or prejudice. Indeed, Casalicchio does not dispute that, even if the notice had stated the correct deadline, he would not have had the funds to pay the past-due balance on his account. Thus, applying Texas precedents, the district court correctly denied relief to Casalicchio, holding that BOKF's "minor" non-compliance with the terms of the deed of trust did not justify unwinding a foreclosure sale. Accordingly, we affirm.

I.

On June 24, 2015, Guilherme Casalicchio received a $393,550.00 loan from BOKF, which allowed him to purchase a home in the Houston Energy Corridor. The loan was memorialized in a promissory note and secured by a deed of trust. The promissory note obliged Casalicchio to make "payments every month until . . . all of the principal and interest and any other charges" have been paid in full. But, having satisfied that obligation for about a year, Casalicchio slacked into delinquency about August 2016.

After Casalicchio missed two consecutive payments, BOKF's automated system generated a form letter that the parties call the "Default Letter" or "Cure Notice." The letter, which we will call the "notice of default,"[1] informed Casalicchio that further delinquency would result in acceleration, *i.e.*, in a demand for immediate payment of the full outstanding loan balance. The notice of default further explained that Casalicchio could prevent acceleration by paying the past-due balance on his account; that he had thirty days to do so; and that, after acceleration, he would retain the right to reinstate his loan by making missed payments, as well as the right to assert any legal defenses

---

[1] We believe that this term best comports with the Texas Property Code's description of the document. *Cf.* TEX. PROP. CODE § 51.002(d); *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 570 (Tex. App.—Amarillo 2013, pet. denied).

No. 19-20246

to acceleration and foreclosure.  Under the deed of trust, these disclosures were a necessary first step in the foreclosure process:

> [BOKF] shall give notice to [Casalicchio] prior to acceleration following [Casalicchio's] breach of any covenant or agreement in this [deed of trust].  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to [Casalicchio], by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by [the deed of trust] and [a] sale of [Casalicchio's] [p]roperty.  The notice shall further inform [Casalicchio] of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense . . . to acceleration and sale.

Importantly, the notice of default is dated September 5, 2016, which reflects the day that the document was printed by BOKF's automated system, not the day that it was mailed.[2]  Accordingly, BOKF's automated system calculated a thirty-day cure window from the printing date and erroneously instructed Casalicchio to deliver "a cashier's check or certified funds for the total [past-due] amount . . . by noon on 10/05/16."  Casalicchio, of course, did not heed this instruction and his delinquency dragged on.

Nevertheless, BOKF chose not to accelerate right away.  Instead, it repeatedly offered to modify the terms of Casalicchio's loan, *e.g.*, by extending the repayment period, offering Casalicchio reduced monthly payments, and providing Casalicchio with an interest-free deferment of up to 30% of the loan's outstanding principal.  These loan-modification proposals, which were offered to Casalicchio in November 2016 and March 2017, expressly informed Casalicchio that he could avoid foreclosure by resuming monthly payments. But, again, Casalicchio failed to take action.

---

[2] The notice was mailed a week later, on September 12.

No. 19-20246

By the summer of 2017, BOKF had exhausted its patience. On June 12, the bank accelerated Casalicchio's loan and notified him that a foreclosure sale had been scheduled for the following month. By the time BOKF accelerated the loan, Casalicchio's debt was 313 days (about ten months) delinquent. On July 4, the property was sold to the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which took title and soon initiated eviction proceedings in Texas state court. To date, Casalicchio remains delinquent but continues to possess the property. He has vigorously and successfully resisted Freddie Mac's efforts to evict him.

## II.

Using this case as a vehicle, Casalicchio continues his resistance. Originally, he filed suit in Texas state court, seeking, *inter alia*, a declaratory judgment voiding the foreclosure sale, damages for an alleged breach of the deed of trust, and an injunction barring Freddie Mac from pursuing eviction. BOKF removed the case to the Southern District of Texas, where, on a motion for summary judgment, the district court dismissed all of Casalicchio's claims.

Noting that the claims were all "base[d] on . . . alleged defects in the notice of default," the court reasoned that "minor defects in an otherwise valid foreclosure sale do not void it." The district court, in other words, held that Casalicchio's claims could not survive summary judgment unless the alleged defects in the notice of default produced some quantum of real-world harm. Finding that, on the contrary, the alleged defects were "minor, technical error[s]," the district court granted summary judgment to the defendants and dismissed Casalicchio's suit with prejudice. Down but not out, Casalicchio pursues this appeal.

No. 19-20246

## III.

At bottom, Casalicchio's appeal hinges on a single issue.[3]  He challenges the district court's summary judgment ruling and, in particular, its conclusion that "minor, technical" deviations from a deed of trust's requirements do not justify setting aside a foreclosure sale.  We review a "grant of summary judgment *de novo*, applying the same legal standards as the district court." *Am. Home Assur. Co. v. United Space All., LLC*, 378 F.3d 482, 486 (5th Cir. 2004).  Because, in this case, the material facts are either undisputed or indisputable, we inquire only whether the district court properly applied Texas law. *Cf. Fed. Ins. Co. v. Ace Prop. & Cas. Co.*, 429 F.3d 120, 122 (5th Cir. 2005).

Casalicchio argues that, because the deed of trust entitled him to a "date, not less than 30 days from the date the notice [of default was] given," BOKF's failure to provide a deadline thirty days from the day that the notice of default was mailed triggers the longstanding Texas rule that non-judicial foreclosure sales are void when they fail to conform to the terms of a deed of trust.[4] *See, e.g.*, *Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942).

Although Casalicchio states in conclusory fashion that he was "damaged" by BOKF's non-compliance with the deed of trust, in practice he does little to contest the district court's conclusion that any non-compliance was lacking in practical effect to him.  Nor could he.  The record conclusively demonstrates that the incorrect deadline on the notice of default was devoid of real-world

---

[3] Casalicchio briefly argues that the district court somehow violated Federal Rule of Civil Procedure 56(a) by denying his motion to alter or amend the judgment (under Federal Rule of Civil Procedure 59(e)) without stating its reasons.  But Rule 56 applies, by its plain terms, to motions for summary judgment, not motions to alter or amend. *See* Fed. R. Civ. P. 56(a) ("A party may move for *summary judgment* [and the] court should state on the record the reasons for granting or denying the motion." (emphasis added)).

[4] Casalicchio is correct that the mailing date is the relevant benchmark.  The deed of trust states that "[a]ny notice to [Casalicchio] in connection with [the deed of trust] shall be deemed to have been given . . . when mailed by first class mail or when actually delivered to [Casalicchio's] notice address if sent by other means."

significance.  For example, it is undisputed that BOKF did not accelerate the loan on October 5 *or* October 12.  Instead, BOKF waited until the following June and, in the interim, offered Casalicchio multiple opportunities to cure his default by making reduced monthly payments.  Clearly, the deed-of-trust provision on which Casalicchio relies was designed to afford him "a lengthy notice period in which he may cure."  *See Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 674 (Tex. 1987).  Practically speaking, he received just that: he was on notice of his default and had an opportunity to cure, not for thirty days (as the deed of trust would require), but for roughly nine months.

Moreover, Casalicchio concedes that he did not have the money to make missed payments at any point between October 5 and October 12.  It follows that he could hardly have been prejudiced by the computer-generated error on the notice of default: that is to say that, even if he had been informed of the accurate October 12 deadline, he would have remained in default and suffered the identical consequences.

Casalicchio's real argument is that, under Texas law, non-judicial foreclosure sales must be set aside whenever the lender deviates from the deed of trust's requirements, no matter how harmless or insignificant that deviation may be.  He contends that a lender who fails to comply with a deed of trust's notice requirements is in the same position as a skydiver who "jump[s] without a parachute."  In short, he argues that non-compliance with a deed of trust's provisions is a mistake that cannot be excused or mooted by any later developments.

We acknowledge that Casalicchio's absolute position has a touch of Texas support.  *See Harwath v. Hudson*, 654 S.W.2d 851, 854 (Tex. App.—Dallas 1983, writ ref'd n.r.e.) ("[T]he right of a grantor of a deed of trust to have its provisions strictly complied with to effect a valid foreclosure sale is absolute.").

However, in this diversity case, we must "look to the final decisions of [Texas's] highest court." *FinServ Cas. Corp. v. Symetra Life Ins. Co.*, 941 F.3d 795, 798 (5th Cir. 2019) (quotation omitted). Since the 1980s, the Texas Supreme Court has repeatedly moderated its rule that the "terms of a deed of trust must be strictly followed," clarifying recently that harmless mistakes do not void otherwise-valid foreclosure sales. *See Hemyari v. Stephens*, 355 S.W.3d 623, 628 (Tex. 2011).

In the first of these cases, *University Savings Association v. Springwoods Shopping Center*, a property was sold at a foreclosure sale by a substitute trustee with "no authority to sell the property." 644 S.W.2d at 706. Under the deed of trust, the substitute trustee's power of sale was contingent on the lender recording a notice of appointment with the county clerk's office. *Id.* The lender, however, did not record a notice of appointment until two days after the trustee's sale. *Id.* The Texas Supreme Court was thus asked to decide whether, under the circumstances, an action for wrongful foreclosure may lie, even though the debtor had actual notice of the substitute trustee's appointment and even though "no prejudice or harm resulted from the failure to comply with the recordation provision in the deed of trust."[5] *Id.* The Court held "that the notice received by [the debtor] is a bar to an action for wrongful foreclosure," reasoning that in the light of "the notice given, [the] failure to record an otherwise valid appointment of a substitute trustee does not affect the legality or fairness of the trustee's sale." *Id.* (quotation omitted).

Five years later, in another wrongful foreclosure case, the Texas Supreme Court applied *Springwoods* to circumstances that mirror our

---

[5] "Wrongful foreclosure" is a term of art in Texas. It signifies a cause of action in which the plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682, 687 n.7 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

situation.  Indeed, in *Jasper Federal Savings & Loan Association v. Reddell*, the Court examined an acceleration clause more or less identical to the clause at issue in this case.  730 S.W.2d at 673.  The lender had failed to comply with the provision requiring that the notice of default "inform [the debtors] of [their] right to reinstate after acceleration and [their] right to bring a court action to assert [their] defense[s] to acceleration and sale."  *Id.*  Once again, however, the Texas Supreme Court held that the debtors could not prevail in a suit for wrongful foreclosure.  *Id.* at 674–75.  The Court explained that the debtors "had actual knowledge of their rights by virtue of their prior consultation with . . . legal counsel" and that "notice of the right to reinstate and to bring a court action are not notices required by law."  *Id.* at 674.  The Court thus held that, because "non-statutory foreclosure prerequisites . . . affect[] only the relationship between the debtor and the creditor," actual notice can preclude wrongful foreclosure liability when a lender fails to provide notice required by a deed of trust but not otherwise required by law.  *Id.* at 674–75.

After *Jasper*, it had become clear that the rule requiring "strict" observance of deed-of-trust provisions is not absolute, at least in the wrongful foreclosure context and at least where the deed of trust's requirements do not mimic the requirements of a Texas statute.  Dicta in *Springwoods* had indicated that greater "strictness" may be required outside the wrongful foreclosure context, particularly with respect to "cause[s] of action to set aside . . . trustee's deed[s]."  *See* 644 S.W.2d at 706.  But, in 2011, the Texas Supreme Court decided *Hemyari v. Stephens*, which expanded the scope of decisions like *Springwoods* and *Jasper* and clarified that harmlessly failing to comply with a deed of trust's requirements does not void an otherwise-valid foreclosure sale.  *Hemyari*, 355 S.W.3d at 626–28.

In *Hemyari*, two debtors argued that "defects in the . . . foreclosure sale process . . . render the sale defective and void."  355 S.W.3d at 627–28.

8

Specifically, the debtors, two limited partnerships, complained that the lender had omitted the partnerships' names from the "signature line of the deed of trust and from the substitute trustee's deed," instead erroneously naming each partnership's general partner. *Id.* at 627. Drawing from *Springwoods*, the Court rejected the debtors' argument. The Court noted that the mistake was "so obvious from the face of the deed as to be harmless." *Id.* at 628. In so noting, the Court articulated a general principle, which is of clear relevance here: "minor defects in an otherwise valid foreclosure sale do not void it." *Id.*

Thus, in the final summation, Casalicchio cannot successfully distinguish *Hemyari*. We conclude that, under Texas law, a lender who harmlessly fails to comply with a deed-of-trust provision is saved from the fate of one who "jump[s] [from a plane] without a parachute." Although BOKF failed to provide a "date, not less than 30 days from the date the notice [of default was] given," the record establishes that proper notice would have made no difference to the outcome for Casalicchio; he still would not have had funds necessary to remediate his delinquency. Accordingly, BOKF's omission of the correct, October 12 deadline was but a "minor defect," insufficiently prejudicial to justify setting aside an otherwise valid foreclosure sale.

The district court's grant of summary judgment to BOKF and Freddie Mac is in all respects thus

AFFIRMED.